**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WAYNE THOMAS,<br>Petitioner,<br>v.<br>DONNA ZICKEFOOSE,<br>Respondent. | Civil Action No. 09-5667 (NLH)<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter comes before the Court upon submission of a motion for reconsideration, see Docket Entry No. 5, and it appearing that:

1. Initially, the Clerk received the Petition unaccompanied by either Petitioner's filing fee of $5.00 or by his in forma pauperis application. See Docket Entry No. 1.

2. Later, the Clerk received Petitioner's in forma pauperis application. See Docket Entry No. 2. The application qualified Petitioner for in forma pauperis status.

3. The Petition, as drafted, suggested that Petitioner challenged the denial of Petitioner's request for transfer to a residential re-entry center ("RRC") under the Second Chance Act. See Docket Entry No. 1, at 3. In addition, the Petition expressly stated that the exhaustion of administrative remedies would be futile. See id. at 2.

4. Disagreeing with Petitioner's latter statement, the Court

granted Petitioner in forma pauperis status and dismissed the Petition without prejudice, as unexhausted, without reaching the merits of his challenges. See Docket Entry No. 4.

5. In response, Petitioner filed the motion for reconsideration which is currently before the Court. See Docket Entry No. 5. The motion: (a) asserted that Petitioner exhausted his administrative remedies; and (b) clarified (by means of exhibits attached to the motion) that the challenges Petitioner exhausted administratively were qualitatively different from the ones seemingly asserted in the Petition. See id. Docket Entries Nos. 5 and 5-1. Specifically, Petitioner's exhibits showed that Petitioner was not challenging a denial of transfer to an RRC under the Second Chance Act (for the purposes of the period envisioned by the Act); rather, he was asserting that his rights were violated because the prison officials were considering him for an RRC transfer 17 to 19 months prior to the expiration of Petitioner's prison term. See Docket Entry No. 5-1. The exhibits established the prison officials' opinion that the assessment of statutory factors (associated with Petitioner's potential transfer to an RRC) would be best conducted about 6 months prior to the point in time when Petitioner's transfer to an RRC, if granted, would allow him

to stay at the RRC for the period of 12 months, i.e., the maximum period allowed under the Second Chance Act.[1] See id. Petitioner's motion, however, contended that he had a right to be considered for such transfer three-and-a-half years prior to expiration of his sentence. See id. (showing that Petitioner's projected release date, with good-conduct-time credit factored in, is February 26, 2013, while Petitioner initiated his administrative grievance process on August 17, 2009; that is, three-and-a-half years prior to expiration of his sentence and two-and-a-half years prior to the earliest date when he could be placed, under the Second Chance Act, in an RRC). In other words, Petitioner's motion asserted, mostly, an injury in the form of him "not-knowing-the-answer" to the question when he would be transferred to an RRC as soon as Petitioner wanted to know that answer. See id. In addition, Petitioner's motion also asserted that the Bureau of Prisons ("BOP"), having discretionary power to place Petitioner in a facility of the BOP's choice, could transfer Petitioner to an RRC even sooner than twelve months

---

[1] On August 2, 2010, the Clerk received a letter from Petitioner informing the Court that Petitioner was transferred to a minimum security facility, the Federal Prison Camp at Lewisburg, Pennsylvania, but remained unsatisfied by that transfer and expressing his opinion that his rights were still violated by not having him immediately considered for an RRC transfer. See Docket Entry No. 7 (indicating that Petitioner did not consider his transfer to Lewisburg an event mooting his habeas claims).

prior to expiration of Petitioner's sentence. See Docket Entry No. 5 (making a passim assertion to that effect and, seemingly, relying on the Second Chance Act to make such assertion). In addition to this latter line of Second Chance Acts claims (or, perhaps, in alternative to this latter line of claims), Petitioner's motion suggested that the BOP should have considered Petitioner for transfer to an RRC sooner than twelve months prior to expiration of Petitioner's sentence under Section 3621(b). See id. Finally, Petitioner's motion also made a brief statement to the effect that Petitioner should be qualified for transfer to an RRC sooner than twelve months prior to expiration of Petitioner's sentence because Petitioner had, allegedly, already served 75% of his sentence. See id.

6. None of these assertions has merit.[2]

a. To the degree Petitioner wished to assert that his rights are violated because he cannot obtain the

---

[2] Petitioner's four new challenges are improperly raised, since "a litigant cannot plead claims, state and/or support facts by any non-pleading document, be it moving papers, an opposition to adversaries' motion, the litigant's traverse, etc." Animal Sci. Prods. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 702 F. Supp. 2d 320, 365 (D.N.J. 2010) (citing Bell v. City of Phila., 275 Fed. App'x 157, 160 (3d Cir. 2008); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004); and Veggian v. Camden Bd. of Educ., 600 F. Supp. 2d 615, 628 (D.N.J. 2009)). However, in light of Petitioner's pro se status, the Court finds it warranted to excuse this procedural impropriety and to address the merits of Petitioner's four new challenges.

desired information sooner, i.e., he has to wait 17 to 19 months prior to his release to find out the date when the BOP plans to transfer him to an RRC (and, consequently, the length of the period he would be allowed to spend in that RRC), such challenges are invalid since the date of Petitioner obtaining the desired information cannot serve as basis for a habeas challenge.[3] See Nuckols v. Schultz, 2007 U.S. Dist.

---

[3] The Court of Appeals for the Third Circuit explained the distinction between the availability of civil rights relief and the availability of habeas relief as follows:

> [W]henever the challenge ultimately attacks the "core of habeas" - the validity of the continued conviction or the fact or length of the sentence -a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002). Therefore, a prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the duration of [his] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005). In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint is the appropriate form of remedy. See, e.g., Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (3rd Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3rd Cir. 2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to

LEXIS 42466 (D.N.J. June 8, 2007) (dismissing § 2241 petition asserting that the BOP violated he inmate's rights by refusing to conduct, more than 36 months prior to the inmate's release, a determination as to whether the inmate was eligible to participate in the residential drug abuse treatment program. Noting that the inmate raise his challenges regardless of the fact that the regulation expressly provided for such determination to be conducted within 36 months of release, the court observed that the only "violation" allegedly suffered by the inmate was his need to wait for BOP's determination, but such "need to wait for a determination" could not amount to a viable habeas claim).

b. To the degree Petitioner wished to assert that, under the language of the Second Chance Act, Petitioner was qualified for a transfer to an RRC three-and-a-half

---

assert claims in properly filed civil rights complaint). While a decision as to the date of an inmate's transfer to an RRC might be perceived as changing the execution of the inmate's sentence, see, e.g., Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 237 (3d Cir. 2005), a decision as to the date of an inmate's obtaining knowledge about his transfer has no effect on either the fact of his confinement or the term of his confinement: same as the exact date of parole eligibility (and denial of parole on that particular date) is an issue subject to habeas review, while the particular date of the hearing addressing an inmate's release on parole has no "core" habeas value so long as such hearing in conducted at any point prior to the parole eligibility date.

years prior to his release, Petitioner's claims are, too, without merit. Under the Second Chance Act, "[t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (*not to exceed 12 months*), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. § 3624(c)(1) (emphasis supplied).[4] In light of statute's unambiguous directive, the BOP has no

[4] Since the language of the Second Chance Act provides that "[s]uch conditions *may* include a community correctional facility," it appears that the BOP's placement of an inmate in a facility other than a RRC might satisfy the requirements of the Second Chance Act if such alternative facility provides the inmate with "conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Here, Petitioner was already transferred to the Federal Prison Camp at Lewisburg, Pennsylvania, which is a minimum security correctional facility. According to the BOP, "[m]inimum security institutions, also known as Federal Prison Camps, have dormitory housing, a relatively low staff-to-inmate ratio, and limited or no perimeter fencing[; t]hese institutions are work- and program-oriented; and many are located adjacent to larger institutions or on military bases, where inmates help serve the labor needs of the larger institution or base." Hence, Petitioner's current placement might already meet the requirements of the Second Chance Act. However, out of abundance of caution, this Court presumes - without making a factual finding and for the purposes of this Memorandum Opinion and Order only - that Petitioner's recent transfer to Lewisburg did not meet the requirements of the Second Chance Act.

authority to enlarge this one-year-maximum period. See See Chevron U.S.A Inc. v. Nat'l Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984) ("First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress"). Therefore, Petitioner's demands for a transfer placing him in an RRC prior to the last 12 months of his prison term, under the language of the Second Chance Act, is facially without merit.[5]

[5] Correspondingly, Petitioner's demands for a "sooner" assessment fails to state a claim. Since the BOP is obligated to conduct the five-factor § 3621(b) statutory analysis with an eye on the Second Chance Act's one-year-maximum RRC period, it is reasonable for the BOP to wait 5 to 7 months prior to the earliest moment when the inmate could be placed in an RRC to conduct its review, since – at the very least – such factors of Section 3621(b) as "the resources of the facility contemplated" and "the history and characteristics of the prisoner" are best assessed when the BOP does not have to guess these resources years in advance, and when the BOP has a clearer picture of the entirety of the inmate's pre-RRC-consideration conduct, with only few months left to project. See Chevron, 467 U.S. at 842-43 (1984) (defining the concept of "permissible construction" review); see also Parker v. Conway, 581 F.3d 198, 204 (3d Cir. 2009); accord Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) ("a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another"). Here, the BOP expressly explained to Petitioner that these very considerations were the basis for the decision to conduct Petitioner's assessment for an RRC in 17 to 19 months prior to expiration of his prison term. See Docket Entry No. 5-1.

c. To the degree Petitioner sought to assert that he qualified for an immediate placement in an RRC under the broad language of Section 3621(b), this claim, too, is without merit. It is correct that the Second Chance Act provides that "[n]othing in this [provision] shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under [S]ection 3621."[6] 18 U.S.C. § 3624(c). However, Subsection (b) of Section 3621 explains that the relevant analysis should be conducted by the BOP in connection with its general discretionary placement authority:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau *may* designate *any available penal or correctional facility* that meets minimum standards of health

---

[6] The general rule is that the Fifth Amendment's Due Process Clause does not confer any right upon an inmate to any particular custody or security classification. See Moody v. Daggett, 429 U.S. 78, 88 (1976) ("Congress has given federal prison officials full discretion to control [prisoner classification and eligibility for rehabilitative programs in the federal system] . . . and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process") (citation omitted). Furthermore, "[t]he BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility." Levine v. Apker, 455 F.3d 71, 83 (2d Cir. 2006). An individual sentenced to a period of federal imprisonment is committed to the custody of the BOP under 18 U.S.C. § 3621(a). Once the individual has been committed, the BOP has discretionary authority both in determining the individual's initial placement and in directing the transfer of the prisoner from one penal or correctional facility to another. See 18 U.S.C. § 3621(b); see also Levine, 455 F.3d at 80 ("Congress's use of the language 'may designate' in § 3621(b) endows the BOP with 'broad discretion'").

and habitability . . . .

18 U.S.C. § 3621(b) (emphasis supplied).[7] Nothing in that language obligates the BOP to place Petitioner in any particular institution at any point of Petitioner's confinement.[8] Simply put, for the purposes of his transfer to an RRC, Petitioner must look at the more specific language of the Second Chance Act rather than at the broad language of Section 3621(b), just as an inmate seeking a "nearer to release" transfer must look at the language of the BOP's program statement providing the inmate with that specific right (while building on the five-factors incorporated in the umbrella language of § 3621).

d. Finally, the rationale of Petitioner's reference to him having served, allegedly, 75% of his prison term is unclear. The only reference to a 75% figure this Court is aware of in the context of the Second Chance Act is the one made in the Act directing the Attorney General,

---

[7] In determining such placements and transfers, the BOP must consider the following five factors: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . ; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

[8] A fortiori, nothing in the language of § 3621(b) obligates the BOP to *re-assess* Petitioner for transfer to any particular facility at any point of Petitioner's confinement.

in coordination with the BOP, to institute a pilot program "to determine the effectiveness of removing eligible elderly offenders from a Bureau of Prisons facility and placing such offenders on home detention" until their term of confinement has expired. See 42 U.S.C. § 17541(g)(5)(A) (i)-(iii) (for purposes of that pilot program, an "eligible elderly offender" was defined as an offender who, inter alia, is at least 65 years old and has served the greater of 10 years or 75% of the term imposed at his/her sentencing). However, this portion of the Second Chance Act is facially inapplicable to Petitioner's circumstances. See <<http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false&FirstName=WAYNE&Middle=&LastName=THOMAS&Race=U&Sex=U&Age=&x=70&y=19>> (indicating that Petitioner, being the only Wayne Thomas currently in confinement and the only Wayne Thomas confined at Lewisburg, is 53 years old).

7. In light of the foregoing, Petitioner's motion for reconsideration will be granted in form and denied in substance.[9] A motion for reconsideration is a device of

---

[9] The United States Court of Appeals for the Third Circuit has indicated that a litigant's motion for reconsideration should be deemed "granted" when the court's decision addresses the merits — rather than the mere procedural propriety or lack thereof - of that motion. See Pena-Ruiz v. Solorzano, 281 Fed.

limited utility. There are only four grounds upon which a motion for reconsideration might be granted: (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly-discovered or previously unavailable evidence; (c) to prevent manifest injustice; and (d) to accord the decision to an intervening change in prevailing law. See 11 Charles A. Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986) (purpose of motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence). "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp., 996 F. Supp. 409, 442 (D.N.J. 1998). In contrast, mere disagreement with the district court's decision is an inappropriate ground for a motion for reconsideration: such disagreement should be raised through the appellate process. See id. (citing Bermingham v. Sony

---

App'x 110, 2008 U.S. App. LEXIS 12436, at *2-3, n.1 (3d Cir. 2008). However, the very fact of the court's review does not prevent the court from reaching a disposition identical — either in its rationale or in its outcome, or in both regards — to the court's earlier decision. See id.

Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)); see also Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001) (a motion for reconsideration may not be used as a means to reargue unsuccessful theories). Consequently, "[t]he Court will only entertain such a motion where the overlooked matters, if considered by the Court, might reasonably have resulted in a different conclusion." Assisted Living, 996 F. Supp. at 442; see also Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) ("[M]otions for reconsideration should be granted sparingly"); Edward H. Bohlin, Co. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir. 1993) (a district court "has considerable discretion in deciding whether to reopen a case under Rule 59(e)"). Here, none of Petitioner's newly-minted challenges has merit. Therefore, the substantive outcome of the Court's determination will remain the same, i.e., the Petition, as supplemented by the claims asserted in the motion, will be dismissed.

IT IS, therefore, on this 14th day of December , 2010,

ORDERED that Petitioner's motion for reconsideration, Docket Entry No. 5, is granted in form, and the Petition, Docket Entry No. 1, will remain dismissed. Such dismissal will be with

prejudice as to all Petitioner's claims asserted in his motion for reconsideration. Such dismissal will remain without prejudice as to Petitioner's claims asserted in his Petition in the sense that, if Petitioner's prison officials do not consider him for transfer for the last 12 months of his confinement (pursuant to the Second Chance Act) or deny him such transfer (in violation of the statutory requirements of the requirements posed by the factors detailed in Section 3621), Petitioner may renew his challenges articulated in his Petition; and it is further

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion & Order upon Petitioner, by regular U.S. mail and it is finally

ORDERED that the Clerk shall close the file in this matter by making a new and separate entry on the docket reading "CIVIL CASE CLOSED."

/s/ NOEL L. HILLMAN
**Noel L. Hillman,**
**United States District Judge**

At Camden, New Jersey